IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In the Matter of the Search of Information Associated with **NAPALMPSALMIST@YAHOO.COM** That is Stored at Premises Controlled By YAHOO! Inc., 701 First Ave, Sunnyvale, CA 94089 | Magistrate's No. *16-36* MJ<br><br>**[UNDER SEAL]** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, James A. Simpson, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at the premises owned, maintained, controlled, or operated by YAHOO! Inc., an e-mail provider headquartered at 701 First Ave, Sunnyvale, CA 94089.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require YAHOO! Inc. to disclose to the United States, copies of the information (including the content of communications and subscriber information) further described in Attachment A.  Upon receipt of the information described in Attachment A, government-authorized persons will review that information to locate the items described herein, for the time period beginning on January 1, 2011, to the present.

2.      I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so for approximately 8 years. I am currently assigned to the Laurel Highlands Resident Agency of the Pittsburgh Division of the FBI.  That resident agency is located in Johnstown, Pennsylvania.  As an FBI Agent, I am an "investigative or law enforcement officer . . . of the

United States" within the meaning of Title 18, United States Code, Section 2510(7). I am an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. Through my experience and training, I know that Title 18, United States Code, Section 922(g)(1) makes it a felony offense for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to possess in or affecting interstate commerce any firearm or ammunition. Moreover, the term "crime punishable by imprisonment for a term exceeding one year" means any Federal or state felony offense, or any state offense classified as a misdemeanor and punishable for a term of imprisonment of two years or more. 18 U.S.C. § 921(a)(20). I am also aware that it is a federal felony offense for two or more people to conspire to commit an offense against the United States (18 U.S.C. § 371), and that it is a federal felony offense to aid, abet, counsel, command, induce or procure the commission of any offense against the United States (18 U.S.C. § 2).

3.       The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.

## JURISDICTION

4.       This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court in the Western District of Pennsylvania is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

2

## PROBABLE CAUSE

5.      On December 8, 2015, your affiant and other law enforcement officers, conducted a consent search of the residence of Eric P. Williams located in Johnstown, Pennsylvania. During the course of the consent search, the agents recovered a Smith & Wesson 9mm pistol, a Stevens 12 gauge shotgun model 350, a Mossberg "AR style" .22 lr caliber semi-automatic rifle, and a quantity of ammunition.  The firearms and ammunition meet the definition of "firearm" and "ammunition" as those terms are defined in 18 U.S.C. § 921.  Amy Williams (nee:  Collier), is the wife of Eric P. Williams and resides with him.  At the time of the consent search, she stated the 9mm pistol was hers and was registered to her.  However, she denied ownership of the shotgun and the .22 rifle.  Eric Williams was questioned and he related he purchased the shotgun and rifle online via the Internet from "Cheaper Than Dirt" and had the firearms shipped to Gander Mountain, a Federal Firearms Licensee (FFL) located in Richland Township, Johnstown, Pennsylvania.  Despite Amy Williams' denial of ownership of the shotgun and .22 caliber rifle, Eric Williams stated the shotgun and rifle belonged to Amy Williams.  The investigation established that Amy Williams picked up the shotgun and rifle from Gander Mountain and completed the ATF Form 4473 when she picked up the firearms.  When confronted with this evidence, Amy Williams admitted picking up the firearms for Eric Williams and completing the Form 4473 because, as she admitted, Eric Williams was a convicted felon and could not purchase the firearms or pick them up from Gander Mountain.  Amy Williams also admitted that when she completed the ATF Form 4473, she made a false statement on the Form 4473 when she stated she was the actual purchaser of the firearms when, in fact, she was purchasing at the direction of and on behalf of, Eric Williams.  During the course of the investigation, agents also recovered a photograph posted on Eric Williams' Facebook page that depicted him wearing a

3

bandoleer containing a number of 12 gauge shotgun shells. I am aware based on my training and experience that neither the firearms nor the ammunition was manufactured within the Commonwealth of Pennsylvania. Therefore, the firearms and ammunition had to have traveled in interstate or foreign commerce.

6.      Criminal records establish that Eric P. Williams was convicted on November 17, 1998, in Clearfield County Pennsylvania of the felony offense of theft by unlawful taking. In addition, the records reflect he was convicted on November 13, 2001, in the Court of Common Pleas of Clearfield County, Pennsylvania, at Criminal Docket CP-17-CR-0000250-2001, of the offense of Robbery – a felony of the first degree.

7.      During the course of the consent search at Williams' residence, your affiant observed a clear plastic bag that contained approximately seven-to-ten pounds of round BB's. At the time of the consent search, the BB's were thought to be innocuous, and were not seized.

8.      Your affiant also obtained consent from Eric Williams to search Williams' computer located in his residence. A subsequent forensic analysis of Williams' computer revealed a subfolder entitled, "Makeshift arsenal photos." The subfolder contained .jpg images (pictures) that depicted a homemade destructive device commonly referred to as a "Claymore Mine", along with manufacturing/assembly instructions and components. The images are included herein.





Also recovered during the forensic analysis of Williams' computer under the user profile

"Lacosanostra." Within that user profile, a subfolder entitled "PDF's" was recovered that

contained the following .pdf files, all of which had been downloaded onto Williams' computer

from various Internet sites:

"Explosives from common materials"

"Field expedient explosives"

"Vietnam mines and booby traps"

"Improvised rockets"

"Kitchen complete explosives"

"Domestic terrorists"

"Terrorists handbook"

"The new world order resistance movement"

"Making plastic explosives"

"Anarchist cookbook IV"

"Anarchist cookbook 666"

"Anarchist cookbook"

An "Ebook" on chemistry and military explosives.

6

9.     Your affiant knows based on training and experience, that "claymore mines" and/or other destructive devices used primarily as anti-personnel devices, typically contain components that are assembled into an "explosive train". This routinely involves a fully enclosed container that is able to hold a quantity of explosive material and a fuse or wick that can be lit by an open flame and leads to the explosive material within the container. Once the device is initiated, a rapid chemical reaction creates combustion gases that rapidly expand and violently rupture the container thus creating the nearly instantaneous and intended explosion. The ruptured container tears, shatters, and/or splits into various smaller pieces that are propelled, omnidirectionally, by the exploding gases and act as shrapnel. In addition to the intrinsic destruction component of the containment vessel, antipersonnel items such as BB's, nails, and ball bearings are sometimes added to the device to maximize the shrapnel potential and increase the lethality of the device.

10.     Your affiant knows through training, knowledge and experience that "claymore mines" can be a lay term, typically used to describe an improvised explosive device (IED), as described herein. In addition, to the IED variety, there is also a military production of a "claymore mine", referred to as an "M18 Claymore". An M18 Claymore consists of a plastic case that is concave and rectangular in shape. The plastic component contains a composition of C4 explosives. The concave nature of said device allows for the forward blast area to produce a fan-shaped pattern of steel balls across a horizontal arc. The steel balls packed within the "Claymore mine", which are used as antipersonnel projectiles, are then projected "forward" after detonation of device. Internally the mine contains a layer of C-4 explosive behind a matrix of about seven hundred $\frac{1}{8}$-inch-diameter (3.2 mm) steel balls set into an epoxy resin. An image of the internal components of an M18 Claymore is included.

7



11.     A "claymore mine", regardless of whether it is the M18 military version, or the IED version, falls within the definition of "destructive device" as set forth in 26 U.S.C. § 5845(f). It should be noted that the definition of destructive device under federal law also encompasses "any combination of parts either designed or intended for use in converting any device into a destructive device ... and from which a destructive device may be readily assembled." Accordingly, to lawfully possess such a device, the device must be registered to that person in the National Firearms Registration and Transfer Record. An ATF records check confirmed that neither Eric Williams nor Amy Williams (nee: Collier) has any destructive device registered in their names.

8

12.     On March 03, 2016, a search warrant was executed at the residence of Eric and Amy Williams located at 554 Duwell Street, Johnstown, Pennsylvania, in which body armor, an Army Field Manual for Booby traps, containers of BB's, a "suicide vest" with faux sticks of dynamite attached, and a quantity of .40 caliber ammunition were seized.  It should be noted that at no time did any of the agents observe a BB-gun, pellet gun, or other weapon typically designed to fire BB's.

13.     On March 10, 2016, your affiant conducted an interview of Amy Williams, during which she related the following: that Eric Williams maintained an additional email account, which he didn't share with anyone; she recalled seeing the name "Napalmpsalmist" when she logged into her YAHOO! email account; the account was a YAHOO! email account; Eric Williams kept an SD card secreted in his wallet; Amy Williams was unaware of what was on the SD Card;  Amy Williams' cell phone number was 814-341-0166; Eric Williams' cell phone number was 814-619-5606; both phone numbers were registered through Verizon Wireless; that Eric Williams had a contact she knew only as "Raymond" whose telephone number began with area code (716); and she believed "Raymond" was an attorney and communicated with Eric Williams via the "What's Up" telephone App.  I am aware that the "What's Up" Application is a free messaging application available for Android and other smartphones and that it allows users to send and receive messages, calls, photos, videos, documents, and voice messages.

14.     On March 11, 2016, a search warrant was executed at the Williams' residence located at 554 Duwell Street, Johnstown, Pennsylvania, for a search of the wallet owned by Eric Williams.  The wallet was recovered and a 16GB SD Card was seized from his wallet.  A subsequent forensic review of the SD card disclosed numerous files, including graphic novels

9

depicting the rape and torture of women, news articles on bombing incidents such as the Boston Marathon bombing, a Youtube video of Eric Williams wearing a bandolier of shotgun shells and holding a shotgun, documents on bomb making and schematics on building bombs. A file that contained a list of email accounts and passwords for Eric Williams was also recovered. Among the listed accounts was **napalmpsalmist@yahoo.com, israelsharifphakur@gmail.com,** and **napalmpsalmist@aol.com**. I am aware, based on training and experience, that "napalm" is a highly flammable, sticky jelly used in incendiary bombs and flamethrowers, consisting of gasoline thickened with special soaps. The PayPal account for Eric Williams was also listed. Investigation established that Eric Williams used his PayPal account to purchase 12 Gauge shotgun ammunition, .22 lr caliber ammunition, and a 50-round drum magazine for a GLOCK semi-automatic pistol.

## BACKGROUND CONCERNING EMAIL

15.    Based on my training and experience, I am aware that that YAHOO! Inc. provides a variety of on-line services, including electronic mail ("e-mail") access, to the general public. YAHOO! Inc., allows subscribers to obtain email accounts at the domain name "yahoo.com", like the email account listed herein. Subscribers obtain an account by registering with YAHOO! Inc. During the registration process, YAHOO! Inc. asks subscribers to provide basic personal information. Based on my training and experience, I am further aware that, generally, when the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to YAHOO! Inc.'s servers, and then transmitted to its end destination. YAHOO! Inc. often saves or retains a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the YAHOO! Inc. server, the e-mail can remain on the system indefinitely. An email

that is sent to a YAHOO! Inc. email subscriber is stored in the subscriber's "mail box" on YAHOO!'s servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on YAHOO!'s servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on YAHOO!'s servers for a certain period of time. Therefore, the computers/servers maintained by YAHOO! Inc. are likely to contain stored electronic communications (including retrieved and un-retrieved e-mail for YAHOO! Inc. subscribers) and information concerning subscribers and their use of YAHOO! Inc. services, such as account access information, e-mail transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users, as well as the identity of accomplices and confederates who were communicating with the user.

16.     In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email and attachments to emails, including pictures and files. Such files are often stored on servers maintained and/or owned by YAHOO! Inc. Subscribers to YAHOO! Inc. might not always store, on their home computers, copies of the e-mails stored in their YAHOO! Inc. account. This is particularly true when a subscriber accesses their YAHOO! Inc. email account through the web, or if they do not wish to maintain particular e-mails or files in their residence.

17.     E-mail providers like YAHOO! Inc. generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of

payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, this information often provide clues to their identity, location or illicit activities.

18.     E-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via YAHOO! Inc.'s website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

19.     I am also aware that, in some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

12

20.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email). Stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement). Lastly, such information may provide information concerning any associates or

13

confederates of the individual who may be participating in the crimes under investigation or aiding and abetting the crimes.

21.     Based on the foregoing, I request the Court issue the proposed search warrant. Because the warrant will be served on YAHOO! Inc. who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time of the day or night.

### REQUEST FOR SEALING

22.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application, affidavit, and search warrant.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize and compromise the investigation.

23.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

### CONCLUSION

24.     Based upon the above information, I submit there is probable cause to believe that, evidence, fruits, and instrumentalities of the offense of unlawful possession of firearms by a convicted felon, in violation of Title 18, United States Code, Section 922(g)(1); conspiracy, in

14

violation of Title 18, United States Code, Section 371; and, Aiding and Abetting, in violation of

Title 18, United States Code, Section 2 will be found among information associated with email

account **NAPALMPSALMIST@YAHOO.COM** that is stored at premises owned, maintained,

controlled, and operated by YAHOO! Inc., an e-mail provider headquartered at 701 First Ave,

Sunnyvale, CA 94089.

Respectfully submitted,

JAMES A. SIMPSON
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
this 1st day of July:

KEITH A. PESTO
United States Magistrate Judge
Western District of Pennsylvania

15

## ATTACHMENT A

**I.    Information to be disclosed by YAHOO, Inc. ("the provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of YAHOO! Inc., including any emails, records, files logs, or information that has been deleted but is still available to YAHOO! Inc., or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the provider is required to disclose the following information to the government for YAHOO! Inc. email account

**NAPALMPSALMIST@YAHOO.COM** .

        a.     The contents of all e-mails stored in the account, including copies of e-mails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent or received, and the size and length of each mail, including any attachments thereto, for the time period beginning January 1, 2011, to the present;

        b.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

        c.     All records or other information stored by an individual using the account, including address books, contact and buddy lists, pictures, and files;

d.      All records pertaining to communications between YAHOO! Inc. and any person regarding the account, including contacts with support services and records of actions taken.

e.      All records pertaining to other YAHOO! Inc. services, such as YAHOO! Email, YAHOO! Instant Messenger, etc.

**II.      Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 922(g)(1), 371, and 2 involving Eric P. Williams, Amy Williams (nee: Collier), and others, associated with YAHOO! Inc. email account **NAPALMPSALMIST@YAHOO.COM** pertaining to the following matters for the period January 1, 2011, to the present:

a.      Electronic mail coordinating or arranging the purchase, sale, distribution of illegal drugs;  receipts and payments associated with narcotic proceeds, including financial institution electronic mail correspondence; and electronic email correspondence between Eric P. Williams, Amy Williams (nee: Collier), and others documenting steps to further illegal possession of firearms and ammunition.

b.      Records relating to the identity of who created, used, or communicated with the account or identifier.

2

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by YAHOO! Inc., and my official title is _____. I am a custodian of records YAHOO! Inc. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of YAHOO! Inc., and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

     a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

     b.    such records were kept in the ordinary course of a regularly conducted business activity of YAHOO! Inc.; and

     c.    such records were made by YAHOO! Inc. as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.


_____    _____
Date                                            Signature